# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CARL PERKINS,

               Petitioner,         :     Case No. 3:14-cv-322

      - vs -                      District Judge Walter Herbert Rice
                                      Magistrate Judge Michael R. Merz

WARDEN, Madison Correctional
  Institution,

                               :
               Respondent.

# REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. §2254 for a writ of habeas corpus.  Mr. Perkins filed the Petition September 29, 2014 (Doc. No. 1).  The Court ordered an answer and provided dates for the answer and Perkins' reply (Doc. No. 2).  The Warden has filed the state court record and a Return of Writ (Doc. Nos. 6, 7) and the time set for Petitioner's reply has expired without any filing.  The case is therefore ripe for decision.

**Procedural History**

This case resulted from a traffic stop on June 1, 2012, of an automobile with four passengers on Interstate 70 by Ohio Highway Patrol Trooper Shaun Smart.  Perkins was indicted on one count of possessing the more than 40, 000 grams of marijuana found in the car.  After jury trial, Perkins was convicted and sentenced to eight years confinement.

Perkins appealed to the Twelfth District Court of Appeals raising the following Assignments of Error.

>    1. Mr. Perkins conviction was based upon insufficient evidence presented at trial by the prosecution.

>    **Issue for Review:** Whether the testimonial evidence presented at trial was sufficient enough to prove all requisite elements of possession of marijuana, and further, support a conviction for assault. [1]

>    2. The trial court erred and/or abused its discretion by permitting the admittance of evidence, over the trial counsel's objection, which was unduly prejudicial and inflammatory to Mr. Perkins.

>    **Issue for Review:** Whether the trial court abused it's [sic] discretion by permitting photographs to be admitted as evidence, during a jury trial, which was unduly prejudicial and inflammatory toward the Defendant.

>    3. Mr. Perkins was denied his right to effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution.

>    **Issue for Review:** Whether Mr. Perkins was denied his right to effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution.

(Appellant's Brief, Ex. 9 to Return of Writ, Doc. No. 7, PageID 47-48.)  The Twelfth District affirmed the conviction.  *State v. Perkins*, 2013-Ohio-3409, 2013 Ohio App. LEXIS 3497 (12th Dist. Aug. 5, 2013).  The Supreme Court of Ohio declined to exercise jurisdiction over a further appeal. *State v. Perkins*, 137 Ohio St. 3d 1442 (2013).  Perkins then filed the Petition in this case raising the following grounds for relief:

>    **Ground One**: Assign[ment] of Error No. 1:  Insufficient Evidence

>    **Supporting Facts:** Mr. Perkins' conviction was based upon insufficient evidence presented at trial by the Prosecution. At trial and on appeal, there was lack of any direct evidence such as finger

---

[1] There was no conviction for assault in this case.  See Judgment Entry of Sentence, Doc. No. 6-1, PageID 78.

prints, DNA, or traceable profits linking Mr. Perkins to the marijuana. Perkins was unaware that any drugs were in the vehicle.

**Ground Two**: Assignment of Error No. 2 The trial court erred and/or abused its discretion by permitting the admittance of evidence, over the trial counsel's objection, which was unduly prejudicial and inflammatory to Mr. Perkins.

**Supporting Facts:** The trial court abused its discretion in admitting the photographs that were taken from Mr. Perkins' phone without a warrant, violating Mr. Perkins Fourth Amendment rights. Also, the prosecution deprived Mr. Perkins a fair trial by putting a picture of him at the time of his arrest with the word guilty above his head several times during the prosecution's opening statement and during trial. The picture was used to persuade the jury and should have been a misconduct.

**Ground Three**: Assignment of Error No. 3. Mr. Perkins was denied his right of effective assistance of counsel pursuant to the Sixth Amendment of the United States of Constitution.

**Supporting Facts:** Mr. Perkins was denied his right to effective assistance of counsel, because his trial counsel failed to object to the presentation of multiple boxes of the seized marijuana and to the fact that the evidence was left in the court room throughout the duration of the trial. The marijuana was also opened in court, not how it was packaged in the car.

(Petition, Doc. No. 1.)

**Ground One: Insufficient Evidence**

In his First Ground for Relief, Perkins claims he was convicted on insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due

Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v.*

*Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d

987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order

3

for a conviction to be constitutionally sound, every element of the crime must be proved beyond

a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United*

*States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in

Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).   Of course, it is state law which

determines the elements of offenses; but once the state has adopted the elements, it must then

prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a

4

> petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam).*

This claim was Assignment of Error One on direct appeal and the Twelfth District decided it as follows:

> [*P5]  Assignment of Error No.1:
>
> [*P6]  MR. PERKINS [sic] CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE PRESENTED AT TRIAL BY THE PROSECUTION.
>
> [*P7]  Perkins argues in his first assignment of error that his conviction is not supported by sufficient evidence.

[*P8]  When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson,* 12th Dist. Warren No. CA2006-01-007, 2007 Ohio 2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded on other grounds. The credibility of witnesses is primarily a determination for the trier of fact, who is in the best position to observe the witnesses' demeanor, gestures and voice inflections. *State v. Benson,* 12th Dist. Butler No. CA2009-02-061, 2009 Ohio 6741.

[*P9]  Perkins focused at trial and on appeal on the lack of direct evidence such as fingerprints, DNA, or traceable profits linking him to the marijuana. However, a conviction can be based on circumstantial evidence alone. *State v. Shannon,* 191 Ohio App. 3d 8, 2010 Ohio 6079, ¶ 10, 944 N.E.2d 737 (12th Dist.). Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind. *State v. Ortiz-Bajeca,* 12th Dist. No. CA2010-07-181, 2011 Ohio 3137. Circumstantial evidence and direct evidence inherently possess the same probative value. *Id.* In some cases, certain facts can only be established by circumstantial evidence, and a conviction based thereon is no less sound than one based on direct evidence. *Shannon.* In fact, circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. *State v. Ballew,* 76 Ohio St.3d 244, 249, 1996 Ohio 81, 667 N.E.2d 369 (1996).

[*P10]  Perkins was convicted of possession of marijuana, in violation of R.C. 2925.11(C)(3)(g), which states,
(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

(C) Whoever violates division (A) of this section is guilty of one of the following:

(3) If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this

section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:

(g) If the amount of the drug involved equals or exceeds forty thousand grams, possession of marihuana is a felony of the second degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the second degree.

[*P11] According to R.C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2925.01(K) defines possess or possession as "having control over a thing or substance, but [possession] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. Constructive possession exists when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Gaefe,* 12th Dist. Clinton No. CA2001-11-043, 2002 Ohio 4995, ¶ 9. Dominion and control can be proven by circumstantial evidence alone. *Id., see also State v. Contreras,* 12th Dist. Butler No. CA2004-07-181, 2006 Ohio 1894

[*P12] After viewing the evidence in a light most favorable to the prosecution, we find that the jury could have found that Perkins knowingly obtained or possessed the marijuana. Perkins argues that there is insufficient evidence because he was unaware that the drugs were in the vehicle. Perkins testified in his own defense that he only went with Robinson in order to help him pick up someone from the airport. Perkins testified that he agreed to go to Chicago because he had never been and did not have other plans for the day, and that he never questioned Robinson as to why they were driving seven hours from Pennsylvania to Illinois to pick up someone from the airport. Perkins testified that he listened to music and watched a movie on his IPod as Robinson drove to and from Chicago, and that he was unaware of any drug-related conversations. Perkins also testified that he was essentially unemployed so that he could help care for his six children, and earned money helping his girlfriend sell baked goods at a local flea market. Perkins also testified that he had a prior conviction for trafficking in cocaine, but had not sold drugs since the conviction seven years prior to his arrest.

[*P13] The state presented testimony and evidence that directly contradicted Perkins' assertion that he did not know that the drugs were in the vehicle. Trooper Smart, who is an experienced interdiction officer who has executed "several thousand" traffic stops, testified that he stopped the vehicle for an unsafe lane change, and approached the passenger-side of the vehicle. Trooper Smart stated that as soon as the passenger-side window was rolled down, he smelled the odor of marijuana. He described the smell as "strong. Immediately apparent. Very obvious that it was raw, not burnt." Trooper Smart later testified that "the odor of marijuana was so overwhelming that at no point was there ever any question that there was raw marijuana in this car." This testimony indicates that Perkins, as a passenger in the vehicle, would have been exposed to the "overwhelming" odor of marijuana and would have known of its existence.

[*P14] Trooper Smart also testified that he noticed immediately that the driver and two backseat passengers were nervous, but that Perkins would not break eye contact and looked at him in an "unfriendly," "belligerent," and "unnerving" way. Trooper Smart testified that he spoke to Robinson who stated that the group was coming from the Argosy Casino in Lawrenceburg, Indiana. Once Trooper Vonsy arrived to provide backup, the troopers had each of the passengers exit the vehicle. Trooper Smart testified that as the passengers were leaving the car, he could see marijuana residue in the car. In total, Trooper Smart found an open bottle of vodka in the driver's door, marijuana debris in the console, five cellular phones, a can of Lysol, the two large bricks of marijuana, as well as other boxes and bags of marijuana. In total, 103 pounds of marijuana were seized from the vehicle, which had a street value between $225,000 and $500,000. Trooper Smart testified that the drugs in the console area were in plain view, as the console was uncovered. Also, the large containers of marijuana were in the back area of the vehicle, which was also uncovered. This evidence indicates that Perkins would have been aware of the fact that there was a large amount of marijuana in the vehicle.

[*P15] Despite Perkins' assertion at trial that he had not dealt drugs or been involved in drug sales since his conviction seven years prior to his arrest, the state presented evidence that Perkins' phone contained photographs indicating his involvement in the drug trade. The police performed a search of Perkins' cell phone and discovered several pictures of large amounts of cash, as well as pictures of marijuana and other drug paraphernalia. Perkins' testimony does not explain how or why his phone contained

8

multiple pictures of large amounts of cash, quantities of marijuana, and other drug paraphernalia, and the jury reasonably inferred that such large amounts of cash could not have been earned selling baked goods at the flea market.

[*P16] Deputy Sheriff Joseph Renner also testified. Deputy Renner is the Preble County Jail Administrator, and performs work with the computer network and software system in the jail. Deputy Renner testified that while Perkins was incarcerated at the jail, he made several phone calls that were recorded through a software program. During phone calls, Perkins can be heard stating that he was the "low man on the totem pole," that he wanted to know what Robinson wanted him to say about their circumstances, that they were foolish to have traveled on Interstate 70, and that they were fortunate that the stop was performed  in Ohio because Indiana has a zero-tolerance policy on drug-related offenses. These statements indicate that Perkins recognized his place in the drug transaction, and was aware of the consequences of the decisions made during the drug transaction.

[*P17] Esteban Sanchez testified to the details of the drug transaction that was in progress at the time Trooper Smart pulled the vehicle over. Sanchez testified that the parties involved in the transaction were Telles, himself, Perkins and Robinson. His role was to make sure that Telles did not get robbed during the transaction. Sanchez explained that the drug supplier was located in Chicago, Illinois, and agreed to "front" the drugs to Robinson and Perkins, who would then deliver the marijuana to Pennsylvania for sale and distribution. Sanchez and Telles agreed to take the money back to Chicago to pay the supplier, and to then return to their native Mexico.

[*P18] Sanchez testified that he went to Chicago and met Telles at a motel. Sanchez stated that Perkins and Robinson were with Telles when he met them at the motel, and that before that time he did not know Robinson or Perkins. Sanchez testified that the four men stayed the night at the motel and that the next morning, he and Perkins waited in the parking lot of a McDonalds while the drugs were being loaded into the vehicle. Once Sanchez and Perkins rejoined Telles and Robinson, the four drove from Chicago into Indianapolis and then into Ohio.

[*P19] Sanchez testified that during the travel, Robinson stated that there would be $90,000 waiting at his house. Sanchez also stated that the four talked about another possible drug transaction in the coming week. Sanchez testified that Perkins heard the

9

conversation, and was not listening to music in any manner when the conversation occurred. Sanchez also stated that at no time did the group stop at a casino during their travels. This evidence, when viewed in a light most favorable to the prosecution shows that Perkins was an active member of the drug transaction, and that he knew that there were drugs in the vehicle at all times.

[*P20]  The jury chose not to believe Perkins, and instead found the state's witnesses credible. As the trier of fact, and the ultimate decider of credibility, determining which story was more plausible was within the jury's province, and we will not disturb that decision. As such, Perkins' first assignment of error is overruled.

*State v. Perkins,* 2013-Ohio-3409 (12th Dist. Aug. 5, 2013).

As the recitation of facts by the court of appeals makes clear, there was ample evidence from which a jury could have found, beyond a reasonable doubt, that Perkins knew exactly what was going on and was completely involved in the drug transaction.  There is no requirement in law of presenting forensic evidence such as Perkins' recovered DNA or fingerprints from the seized marijuana.  Here the State presented direct (eyewitness) testimony from a co-conspirator. The question of whether to believe him or Perkins was for the jury to decide.  The Twelfth District's decision was neither contrary to nor an objectively unreasonable application of *Jackson v. Virginia*, supra., or other Supreme Court precedent.

The First Ground for Relief should be dismissed with prejudice.


**Ground Two:  Error in Admitting Photographs Taken From Phone**


In his Second Ground for Relief, Perkins claims the trial court abused its discretion in admitting photographs taken from his cell phone.  He also claims these photographs were seized in violation of his Fourth Amendment rights.

In part this claim was raised in the Second Assignment of Error on direct appeal which the Twelfth District decided as follows:

[*P21]       Assignment       of       Error       No.       2:

[*P22]  THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY PERMITTING THE ADMITTANCE OF EVIDENCE, OVER THE TRIAL COUNSEL'S OBJECTION, WHICH WAS UNDULY PREJUDICIAL AND INFLAMMATORY TO MR. PERKINS.

[*P23]  Perkins argues in his second assignment of error that the trial court abused its discretion in admitting the photographs of large amounts of cash, marijuana, and drug paraphernalia that were found on his phone.

[*P24]  "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Gray,* 12th Dist. Butler No. CA2011-09-176, 2012 Ohio 4769, ¶ 25, citing *In re Bays,* 12th Dist. Warren No. CA2003-02-026, 2004 Ohio 915, ¶ 7. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Issa,* 93 Ohio St.3d 49, 64, 2001 Ohio 1290, 752 N.E.2d 904 (2001). An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Barnes,* 94 Ohio St.3d 21, 23, 2002 Ohio 68, 759 N.E.2d 1240 (2002).

[*P25]  According to Evid.R. 403(A), "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Perkins argues that any probative value the photographs had was outweighed by their prejudicial impact and were only meant to "inflame the jury by creating a false sense of or belief that Mr. Perkins was a high level marijuana trafficker who made big profits, despite Mr. Perkins being charged with only possession of marijuana." We disagree.

[*P26]  Perkins testified in his own defense and stated that he had not dealt drugs since his conviction seven years prior to his arrest in Ohio. However, the jury was free to infer from the photographs that Perkins had in fact been involved in the drug trade, given the large amount of cash, drugs, and drug paraphernalia depicted in the photographs. The jury was also free to infer that Perkins' statement

that he earned money from helping his girlfriend sell baked goods at a local flea market was incredulous given the large amount of cash depicted in the photographs.

[*P27] The photographs were probative because they spoke directly to Perkins' claim that he did not participate in drug transactions, did not associate with drug dealers, and had not been involved in the drug trade for seven years. The photographs, however, were not unduly prejudicial to Perkins simply because they incriminated him. As such, Perkins' second assignment of error is overruled.

*State v. Perkins, supra.*

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988);  *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983);  *Bell v. Arn,* 536 F.2d 123 (6th Cir. 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000).  Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly. *Bugh, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)(*quoting Dowling*

*v. United States*, 493 U.S. 342, 352 (1990)).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F.3d  542, 552 (6th Cir. 2000)(*quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).  The Supreme Court has defined very narrowly the category of infractions that violate fundamental fairness. *Bey v. Bagley*, 500 F.3d 514 (6th Cir.  2007), *citing Dowling*, 493 U.S. at 352 (Identification from a trial which resulted in an acquittal could be introduced at second trial for similarities.)

Introduction of the photographs from Perkins phone did not render the trial fundamentally unfair.  Had Perkins not taken the stand in his own defense and claimed he was completely away from the drug trade since his prior conviction seven years before, a very different question would have been presented.  But Perkins put his own credibility directly in issue – and on drug-related questions – by taking the stand.  The photographs were relevant to rebut his claims of innocence.

Perkins' claim that seizure of the photographs from his phone violated his Fourth Amendment rights cannot be considered in this case because it was never fairly presented to the Ohio courts and is therefore procedurally defaulted.

The Second Ground for Relief should be dismissed with prejudice.


**Ground Three:  Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Perkins claims he received ineffective assistance of trial counsel when his attorney did not object to the State's leaving the seized marijuana in the

courtroom throughout the trial and also when he did not object that it did not have the same appearance in the courtroom as it had when seized.  The first part of this claim was raised as the Third Assignment of Error on direct appeal and the Twelfth District decided it as follows:

[*P28]  Assignment of Error No. 3:

[*P29]  MR. PERKINS WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES OF CONSTITUTION. [sic]

[*P30]  Perkins argues in his final assignment of error that he was denied his right to effective assistance of counsel because his trial counsel failed to object to the presentation of multiple boxes of the seized marijuana and to the fact that the evidence was left in the courtroom throughout the duration of the trial.

[*P31]  The Sixth Amendment pronounces an accused's right to effective assistance of counsel. Warning against the temptation to view counsel's actions in hindsight, the United States Supreme Court has stated that judicial scrutiny of an ineffective assistance claim must be "highly deferential* * *." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the appellant  must overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.,* quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L. Ed. 83 (1955).

[*P32]  To demonstrate ineffective assistance of counsel, an appellant must establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers,* 12th Dist. Fayette No. CA2005-12-035, 2007 Ohio 915, ¶ 33, citing *Strickland* at 689. Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland* at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

[*P33]  During the state's case-in-chief, Trooper Smart testified regarding the 103 pounds of marijuana seized from the vehicle in

14

which Perkins was a passenger. The record indicates that before Trooper Smart testified, the marijuana was stored in the back of the court room. During Trooper Smart's testimony, he and the prosecutor moved the marijuana to the front of the court room and then showed the jury how the marijuana was originally packaged and how the packages had been altered in order to perform testing. The marijuana stayed in the court room throughout the rest of the proceedings without objection from defense counsel. However, we do not find that the failure to object resulted in either deficient representation or prejudice.

[**P34**] Instead, having the marijuana in the court room was trial strategy. Perkins asserted throughout trial that he did not know that the vehicle in which he was a passenger contained 103 pounds of marijuana. During opening arguments, defense counsel stated, "Ladies and gentlemen of the jury, using your common sense is a really good idea. How many of you can tell that the marijuana is in the room with us right now? Not one. Look there. Now if you can't smell it and it's right there, this man will say he can't smell it and it will be a reasonable statement." Defense counsel did not object to the presence of the marijuana because he hoped that the jury would believe that Perkins could have ridden in the car without being aware of the presence of the marijuana in the car because they themselves were unable to smell the marijuana. The fact that the jury chose not to believe Perkins' story, however, does not render Perkins' assistance of counsel ineffective. Moreover, the marijuana was that actually seized from the vehicle in which Perkins was a passenger, and the state had the right and duty to present evidence regarding the charges against Perkins.

[**P35**] Perkins argues that "the fact finder was likely inflamed by the amount of drugs, and unlikely to consider the fact that the prosecution did not sufficiently connect Mr. Perkins to these large amounts of drugs being displayed." However, Perkins' argument regarding what was "likely" does not demonstrate a reasonable probability that, but for the marijuana being in the court room, the result of the proceeding would have been different. Simply stated, Perkins has failed to demonstrate that he received ineffective assistance of counsel. As such, Perkins' final assignment of error is overruled.

*State v. Perkins, supra.*

Perkins has failed to demonstrate any error on the part of the Twelfth District in deciding this claim. It fails the first prong of the *Strickland* test because it was not deficient performance

15

but in fact trial strategy.  Defense counsel was attempting to undermine Trooper Smart's testimony about the obvious smell of raw marijuana by asking the jury if it was so obvious to them, exposed as they were to it.  The fact that, in retrospect, the strategy did not work does not mean it was ineffective assistance of trial counsel to try.

The second part of this claim – failure to object that the marijuana did not appear the same in the courtroom as it did when it was seized – is procedurally defaulted because it was never presented to the state courts.  Moreover, there is no suggestion of evidence tampering: Trooper Smart testified what had been done to the marijuana to make it available for testing.

Ground Three for Relief should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 19, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).